# SETTLEMENT AGREEMENT UNDER THE AMERICANS WITH DISABILITIES ACT BETWEEN THE UNITED STATES OF AMERICA AND THE VOLUSIA COUNTY SCHOOL BOARD
# USAO # 2017V02323
# DJ # 204-17M-472

A.    The parties to this Settlement Agreement ("Agreement") are the United States of America and the Volusia County School Board on behalf of the Volusia County School District System ("VCS").

B.    This matter was initiated by a complaint, USAO # 2017V02323, DJ # 204-17M-472, filed with the United States Attorney's Office for the Middle District of Florida against VCS, alleging, *inter alia*, violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Title II's implementing regulation, 28 C.F.R. pt. 35.

C.    VCS denies any liability concerning the allegations in the complaint or that it engaged in any wrongful act or conduct. This Agreement shall not in any way be construed as an admission by VCS that it has acted wrongfully, and nothing in this Agreement shall constitute evidence of any wrongdoing or liability on the part of VCS. In addition, the United States has not issued a Letter of Finding, pursuant to 35 C.F.R. § 35.172. The parties agree, however, that it is in their best interests, and the United States believes that it is in the public interest, to resolve this dispute without engaging in litigation. The parties have, therefore, voluntarily entered into this Agreement, as follows:

## TITLE II COVERAGE

D.    Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

E.    Title II of the ADA also requires a public entity to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7)(i).

F.    Additionally, under Title II of the ADA, a public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration that have the

effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(b)(3)(i).

G.    VCS is a "public entity" within the meaning of the ADA, 42 U.S.C § 12131(1) and 28 C.F.R. § 35.104 and is, therefore, subject to Title II of the ADA and its implementing regulation.

H.    VCS operates services, programs, and activities within the meaning of Title II of the ADA, which include its education program for student with disabilities.

I.    The United States Attorney's Office, under the authority of the United States Department of Justice (the "Department"), is authorized under the ADA to investigate this complaint to determine VCS' compliance with Title II of the ADA and Title II's implementing regulation, 28 C.F.R. § 35.190(e), and to resolve the matter by informal resolution, such as through the terms of this Agreement.  28 C.F.R. § 35.172(c).  If informal resolution is not achieved, the Department is authorized to issue findings and, where appropriate, to negotiate and secure voluntary compliance agreements.  28 C.F.R. pt. 35, Subpart F.  Additionally, the United States Attorney General is authorized, under 42 U.S.C. § 12133, to bring a civil action to enforce Title II of the ADA.

# BACKGROUND

J.    On or about April 2, 2018, the United States opened an investigation of VCS under Title II of the ADA, 42 U.S.C. § § 12131 - 12134, and Title II's implementing regulation, 28 C.F.R. pt. 35, in response to a complaint received on behalf of eleven students with disabilities, nine of whom have a diagnosis of Autism Spectrum Disorder ("ASD"), in various grade levels and from schools across the school district.  Summarily, the complaint alleged that VCS discriminated against the complainants and engaged in systemic discrimination against students with disabilities by relying on overtly punitive disciplinary tactics and law enforcement to address behaviors that are known, or should be known, manifestations of the students' disabilities.  The complaint further alleged that VCS routinely sought to exclude these students by removing them from VCS' educational program through (1) informal removals, including regularly requiring parents or guardians to pick-up their children from school, telling a parent or guardian to keep a student home without a formal suspension, and otherwise regularly removing students with disabilities from instruction; (2) formal removals through disciplinary actions, such as suspensions; (3) law enforcement involvement; and (4) the use of "Baker Act" procedures.

K.    Over the course of the investigation, the United States received relevant information concerning students with ASD in 45 of the 85 schools in the VCS District.  The United States reviewed documents received from VCS and conducted interviews of parents, guardians, advocates, service providers, community stakeholders, and VCS employees, including VCS

Exceptional Student Education ("ESE") staff, school administration, teachers, and others. The United States' investigation substantiated the allegations of the complaint and identified issues with VCS' compliance with the ADA's nondiscrimination requirements.

L.    VCS acknowledges the United States' position set forth in Paragraph K, above, and desires to enter into this Agreement.

M.    In consideration for this Agreement, the United States agrees to close its investigation (USAO # 2017V02323, DJ # 204-17M-472) without further enforcement action, except as provided in Sections W and X of this Agreement.  The parties acknowledge and agree that this consideration is adequate and that this Agreement is binding.

## TERMS OF AGREEMENT

N.    <u>General Prohibitions Against Discrimination</u>

1.    VCS will comply with Title II of the ADA, 42 U.S.C. § § 12131-1234, and its implementing regulation, 28 C.F.R. Pt. 35.  As required by Title II of the ADA, VCS will not discriminate against a qualified individual with a disability and specifically:

   a.    will not exclude a qualified individual with a disability from participation in, or deny a qualified individual with a disability, the benefits of the services, programs or activities of VCS by reason of the individual's disability;

   b.    will not utilize methods of administering its programs and services that have the effect of subjecting a qualified individual with a disability to discrimination on the basis of disability;

   c.    will make reasonable modifications to policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless VCS can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity; and

   d.    will not retaliate against any individual or coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by the ADA.

O.    <u>Remedies to be Undertaken by VCS</u>

1.    General

a. VCS shall review and amend as necessary all VCS written policies and procedures that address or relate to students with disabilities to: include the non-discrimination and non-retaliation provisions of the ADA; require compliance with the requirements set forth in Sections O and P; and incorporate the reporting structure for complaints of discrimination or retaliation under the ADA, as described below in Section Q of this Agreement. At a minimum, VCS shall incorporate these revisions, as appropriate, into its Student Code of Conduct, ESE Handbook, written employee policies and procedures, and on its public website.

b. Unless otherwise provided, within one hundred fifty (150) calendar days from the Effective Date of this Agreement, VCS shall submit all newly written or revised policies and procedures under this Section to the United States for review and approval, not to be unreasonably withheld. All written or revised policies and procedures under this Section shall be implemented within ninety (90) calendar days from receipt of approval from the United States or, if approval from the United States is provided at a time when VCS are not in session, within thirty (30) calendar days from the next school day, whichever is longer.

2. Denial of Benefit of Educational Programs

a. Attendance and Classroom/School Removals

i. VCS shall generally prohibit informal removals of students with disabilities from the classroom and from VCS services and activities on the basis of their disability.

1. "Informal removals" are undocumented removals from classroom instruction and VCS services and activities, and include permitting the student to roam from class, or otherwise isolating or removing a student from instruction, and may be accompanied by instructions to the parent/guardian to pick-up the student or keep the student home for a behavioral issue without documentation of a corresponding suspension.

2. "Informal removals" do not include short-term consequences or interventions, including, but not limited to, brief breaks, cooldown sessions, sensory breaks, or other timeouts that may remove the student from the learning environment for brief periods that are part of an Individualized Education Program (IEP), Section 504 plan, or Behavioral Intervention Plan (BIP)); evidence-based interventions used by teachers or classroom support personnel to address

behavioral challenges, including through brief time-outs or other interventions, while generally keeping the student in the classroom environment; or other consequences or interventions that do not remove students from learning in their regular classroom, such as contacting parents/guardians, after-school detention, Saturday school, or counseling. These instances do not have to be separately documented and are not counted in the five- (5-) day threshold set forth in subparagraph iv.

ii.    VCS shall implement a system for tracking all removals of students with disabilities from classroom instruction based on behavioral incidents that may be a result or manifestation of the student's disability. The tracking system shall be monitored by the School Principal or the Principal's designee. VCS shall take affirmative steps, including creating and implementing a District-wide coding procedure, to eliminate School Administrator discretion in how to code and record removals from the classroom, discipline, and absences to ensure uniformity in record keeping.

iii.   If a parent/guardian of a student with a disability is contacted by VCS personnel concerning a behavioral issue that VCS knows may be the result or a manifestation of the student's disability, and the parent/guardian elects to remove the student from school for the remainder of the school day or a period of days, VCS shall require completion of a Student Removal Form, which shall state the reason(s) for the removal and on which the parent/guardian affirms that the parent/guardian is removing the student voluntarily and without threat of discipline or other adverse action to the student. Student Removal Forms shall be logged into the Student Information System, or similar record keeping system, to enable review and evaluation of the total amount of time the student has been removed from class due to behavioral incidents as a result of disability.

iv.    All removals of a student with a disability from classroom instruction shall be documented in writing and maintained in VCS' Student Information System, or similar record keeping system, so that the information can be accessed and monitored by VCS and School Administration, the student's parent/guardian, the student's IEP team, etc. When a student with a disability is removed from classroom instruction for a behavioral incident that may be a result or a manifestation of a student's disability on more than five (5) days within a school year, VCS shall require, within ten (10) school days:

a. For a student who has an IEP, a meeting of the IEP team to determine whether:

   1. A Functional Behavior Assessment (FBA) (or reassessment) is necessary to better assess what behavioral supports or interventions are necessary. If so, the FBA must be conducted within thirty (30) school days following the meeting; or

   2. The student's BIP should be modified with additional or different behavioral supports and interventions and that an FBA is not necessary.

b. For a student who does not have an IEP, a meeting with the parent/guardian, teacher, and Behavior Specialist to determine whether an FBA is necessary to better assess what behavioral supports or interventions are necessary. If so, the FBA must be conducted within thirty (30) school days following the meeting.

3. Reasonable Modifications to Policies, Practices, or Procedures

   a. Appointment of Behavioral Supports Consultant

      i. VCS shall designate and maintain an outside Behavioral Supports Consultant ("Consultant") to provide technical assistance to VCS personnel to evaluate discipline practices and to determine when those practices are applied to students with disabilities whose behaviors may be a result or manifestation of their disabilities.

      ii. The Consultant shall have relevant professional experience consulting with schools or other children's educational agencies on identifying and serving the behavioral needs of students with disabilities, particularly for students with ASD. Within thirty (30) calendar days from the Effective Date of this Agreement, VCS shall provide the United States with the credentials and resume(s) of the person(s) who it intends to appoint or retain as the Consultant for the United States' approval, not to be unreasonably withheld. The United States shall respond to VCS' request for approval of VCS' proposed Consultant within ten (10) calendar days. The Consultant shall be appointed within thirty (30) school days from receipt of approval by the United States or, if approval from the United States is provided at a time when VCS are not in session, within fifteen (15) school days from the next school day, whichever is longer.

iii.   VCS shall have the right to change the Consultant during the term of this
Agreement.  If VCS does change the Consultant, it shall provide the United
States with a detailed explanation in writing for its decision to change this
Consultant no later than seven (7) calendar days after the decision to
change the Consultant has been made.  Further, VCS will provide the
United States with the credentials and resume(s) of the new person(s) who
VCS intends to appoint or retain as the Consultant for the United States'
approval, not to be unreasonably withheld.  The United States shall
respond to VCS' request(s) for approval of a new Consultant within ten
(10) calendar days.

b.   Student Code of Conduct

i.   The "Student Code of Conduct" refers to VCS' Student Code of
Conduct and the collective student behavior and discipline documents
applicable across the school district.

ii.   VCS personnel, including but not limited to the VCS Superintendent and
ESE Director, with the assistance of the Consultant, shall review its current
Student Code of Conduct and propose revisions to ensure that it includes
the following:

a.   Identification of behavior management and prevention strategies
for students with disabilities to be used by school administrators,
faculty, and staff;

b.   A requirement that they attempt and document a range of positive
corrective measures before resorting to exclusionary discipline,
except when the Principal or Superintendent determines that a
student's presence causes a danger to persons or when it is permitted
by law (and School staff document the reasons for any such
exceptions to using non-exclusionary discipline strategies, in the
circumstances described herein);

c.   A description of the key elements of VCS' disciplinary referral
process (appeals, alternative dispositions, timelines, provisions for
hearings, etc.) and a requirement that a student with a disability (or
his or her parent/guardian on the student's behalf) who is being
disciplined through the referral process for behavior that the school
knows may be the result or a manifestation of the student's disability
be given an opportunity to make a written statement in response to

all alleged disciplinary infractions, which shall be considered before
discipline is administered; and

    d.    An overview of when VCS may engage law enforcement,
including SROs, in school-based infractions involving students with
disabilities, in accordance with the Guidelines between Volusia
County School Board and Local Law Enforcement Agencies.

iii.    The Consultant, or the Consultant's designee, shall confer twice per
school year with each school principal or designee to review the school's
discipline data on students with disabilities and the implementation of the
Student Code of Conduct as to students with disabilities and shall provide
particularized assistance, such as implementation of additional evidence-
based practices and retraining, as necessary to ensure that students with
disabilities are not being unnecessarily excluded from school on the basis
of disability or otherwise discriminated against in the administration of
discipline.  The Consultant shall consult with the ADA Compliance
Officer, described in Section Q, as necessary, to carry out this
responsibility.

iv.    VCS shall provide reasonable modifications to its disciplinary policies
and/or procedures when such modifications are necessary to avoid
discrimination on the basis of a student's disability.  VCS shall, in the
Student Code of Conduct, state this policy together with a statement that a
student with a disability or his or her parent/guardian may request
reasonable modifications to VCS' disciplinary policies and procedures for
that student.  Where a student with a disability or his or her parent/guardian
requests a reasonable modification to VCS' disciplinary policies and
procedures, VCS shall not implement disciplinary measures until the
request for a reasonable modification has been resolved, and the student
and/or parent/guardian has received written notification of the resolution of
the modification request.  VCS shall not, however, require such a request
to consider and make such modifications where VCS knows that the
student's conduct may be the result or manifestation of the student's
disability.  In that instance, VCS will consider and make reasonable
modifications to its disciplinary policies and/or procedures when it is
necessary to avoid discrimination on the basis of a student's disability.

v.    Beginning in or after September 2021, VCS shall conduct
parent/guardian programs once per year at each school to assist
parents/guardians of students with disabilities in understanding the School
Code of Conduct and reasonable modifications in behavioral policies,

practices, or procedures to avoid discrimination against students with disabilities.  During these programs, VCS shall also explain the process for filing complaints of discrimination and retaliation under the ADA.

4.   Methods of Administration

   a.   VCS' Use of Law Enforcement in Schools

      i.   VCS shall amend its "Guidelines between the School District and Local Police Departments or SRD/SRO," attached hereto as Appendix A ("Law Enforcement Guidelines"), to ensure that they are consistent with the ADA, including clarifying that police involvement with students with disabilities shall be in accordance with the student's IEP, BIP, and/or Section 504 plan.  VCS shall also take affirmative steps to implement the revised Law Enforcement Guidelines across the District to ensure compliance with the obligations of this Agreement.  Such affirmative steps shall include, but are not limited to, revising VCS policies and procedures to cross reference and require proper application of, providing notice of, and monitoring compliance with, the revised Law Enforcement Guidelines.

      ii.   VCS shall require that all interactions between students with disabilities and law enforcement during school hours as a result of a behavioral issue that results from, or is a manifestation of, the student's disability be documented and maintained in a central database.  Any time a VCS employee requests law enforcement to respond to student conduct that may be a result of a disability, the employee shall complete the report within three (3) school days and in no more than six (6) calendar days.  The report shall include the following:

         a.   The name, grade, school attended, and disability status of the student;

         b.   A description of the incident, what actions led up to the incident, and who witnessed the incident;

         c.   If the student has a Behavior Support Plan, an explanation of whether the terms of the plan were complied with;

         d.   What interventions and de-escalation techniques the employee used before calling law enforcement;

         e.   Why the employee requested law enforcement become involved; and

     f.    The result of law enforcement becoming involved, including citations, charges, Baker Acts, etc.

  iii.    Whenever a report of law enforcement involvement is entered for a student with a disability, the VCS ESE Director, the ADA Compliance Officer, and the Consultant shall receive an email notification with a copy of the report for their review and use of the report, as applicable to their positions.

  iv.    Upon receipt of the report, the ESE Director, in consultation with the Consultant, shall evaluate VCS' involvement of law enforcement together with the terms of any Behavior Support Plan, as applicable, for the student to determine whether the Plan was followed and/or remedial or corrective measures are necessary. The student with a disability and his or her parent/guardian shall each be given an opportunity to make a written or recorded statement to the ESE Director that shall be considered in Director's evaluation. Any finding made as a result of this evaluation and any remedial measures taken shall be documented in writing. Additionally, the ESE Director, along with the Consultant, shall meet with the applicable Police Chief/Sheriff, or designee, and SROs on at least a quarterly basis to review incidents, evaluate the effective use of skills learned through professional development, and identify areas of continuous improvement.

  v.    In response to: 1) any incident involving a student with a disability and interaction with law enforcement as a result of a behavioral issue that may be the result or manifestation of the student's disability as identified in 4(a)(ii) and which resulted in removal of the student from the classroom; or 2) any emergency responses in which a student that VCS knows has a disability was removed from school premises for Baker Act procedures, VCS shall require within ten (10) school days:

     a.    For a student who has an IEP, a meeting of the IEP team to determine whether the IEP or Behavior Support Plan (if applicable) was being followed and whether to revise the IEP or Behavior Support Plan and/or create a Crisis Plan to provide the necessary supports, services, and procedures to prevent reoccurrence of the situation and ensure the safety of the student and others.

     b.    For a student who does not have an IEP, a meeting with the parent/guardian, teacher, and Behavior Specialist to determine whether to create a Behavior Support Plan or Crisis Plan to provide the necessary supports, services, and procedures to prevent

recurrence of the situation and to ensure safety of the student and others.

vi.    VCS shall require that all law enforcement personnel and all VCS School Guardians employed with or contracted for by VCS to work with students with disabilities receive training within ten (10) school days of their assignment to VCS covering the following topics:

a.    An introduction to the laws protecting the rights of students with disabilities, including an explanation of the non-discrimination and non-retaliation protections afforded to students under Title II of the ADA;

b.    An overview of ASD, including characteristics associated with it, such as sensory disabilities, and the behavioral impacts of the disability;

c.    An overview of appropriate de-escalation techniques; and

d.    An explanation of VCS' law enforcement reporting and document retention requirements.

vii.    VCS shall take affirmative steps to ensure that students with disabilities understand the role of law enforcement on the school campus, the significance of threats of harm, the potential consequences for threatening harm to oneself or others, and resources and/or methods for addressing their emotional needs. Within thirty (30) calendar days from the Effective Date of this Agreement, VCS shall provide the United States with its proposed actions to take these affirmative steps in writing for the United States' approval, not to be unreasonably withheld.

b.    VCS' Administration of its Problem Solving Team (PST) Process and Special Education Program

i.    VCS shall review and revise its policies and procedures governing the PST process to ensure equal access to VCS' education program by students with disabilities.  Revisions to the PST process shall include, but are not limited to:

a.    enhanced written guidance for teachers on data collection and benchmarks;

b.    concrete timeframes for when new interventions, supports, or services shall be implemented if the problem is not resolved;

   c. written notifications to parent/guardian regarding the commencement of the PST process and regular status updates concerning the progress of the process; and

   d. requirements and procedures for ensuring continuity for students within the PST process from one school year to the next.

  ii. VCS shall review and revise its ESE policies and procedures to provide appropriate oversight and accountability mechanisms to ensure equal access to VCS' education program by students with disabilities through the prompt and effective implementation of their IEPs and/or BIPs. Revisions to the ESE policies and procedures shall include, but are not limited to:

   a. a system for regular monitoring of IEP/BIP implementation and competency by all VCS staff responsible for the provision of special education services, including transportation, to the student; and

   b. implementation of appropriate remedial measures based upon any issues or concerns identified during the monitoring of IEP/BIP implementation, such as additional training, a meeting with a Behavioral Specialist, etc. when VCS staff are found to not be implementing a student's IEP/BIP.

  iii. VCS shall provide its ESE Director and ADA Compliance Officer, described in Section Q, with the ability and authority to send district-wide communications that concern or relate to protections afforded to students with disabilities under the ADA and/or compliance with the terms of this Agreement.

P. <u>Training</u>

 1. VCS shall develop a mandatory training program on the non-discrimination and non-retaliation requirements of Title II of the ADA and the requirements of this Agreement for all employees and contractors involved and/or working with students with ASD. This training shall be conducted by individuals with substantive legal knowledge of the ADA. The training program shall also include, but not be limited to, instruction on characteristics and needs of students with ASD, evidence-based behavior management strategies and procedures for students with ASD, and collecting data for assessing the effectiveness of supports and interventions. A more detailed description of the content that the training program shall cover is attached hereto as Appendix B.

 2. The training program shall include different levels of training tailored to employees' and contractors' positions and involvement with students with ASD.

3. Training sessions shall be conducted live (in person or via video-conference), with a group opportunity to pose questions to the individual(s) conducting the training at the conclusion of the training session.

4. The training sessions shall be conducted during the 2021-22 school year unless an extension is necessary if the United States does not approve of the training program as provided in Section P(6) below. For persons who must receive the training pursuant to this Agreement, but who did not receive training on the date that it was provided (e.g., because they were on leave from VCS or because they began their affiliation or applicable position with VCS subsequent to the training date or after the 2021-22 school year), VCS shall provide the training to such persons within sixty (60) calendar days after the individual's affiliation with VCS in a position covered by the training or within sixty (60) calendar days of their return to VCS (e.g., from leave). Any such training may either be provided live or via a video recording of a previous live session of the training. If the training is provided via a video recording, the trainer(s) shall be accessible to directly answer any questions a participant may have after viewing the video presentation.

5. For each session of any training conducted under this Agreement, VCS shall maintain attendance logs reflecting the date of the training, names and titles of attendees, and the attendees' signatures.

6. No later than two hundred ten (210) calendar days after the Effective Date of this Agreement, VCS shall send the proposed curriculum for training program set forth herein and the name(s), qualifications (including resume(s)), and contact information of the individual(s) who will conduct the training session via electronic mail to the United States for review and approval, not to be unreasonably withheld. The United States will respond to VCS' proposed curriculum with its approval or disapproval within forty-five (45) calendar days. Upon receipt of approval from the United States, VCS shall incorporate the United States' proposed changes to the training curriculum and shall implement the training program within sixty (60) calendar days of receipt of approval from the United States. If the approval of the United States is provided at a time when VCS is not in session, then the 60-day period shall begin on the next school day that VCS is in session.

Q. **ADA Compliance Officer**

1. VCS shall designate and maintain an ADA Compliance Officer, who will have responsibility for monitoring compliance with this Agreement, including ensuring that VCS adopts and implements the Remedies to be Undertaken by VCS set forth in Section O and Training set forth in Section P and complies with the Reporting Requirements set forth in Section S of this Agreement. The ADA Compliance Officer

will also be responsible for receiving all complaints alleging potential violations of
Title II of the ADA and its implementing regulations, routing such complaints to the
appropriate VCS officials, and memorializing the resolution of complaints.

2.     The ADA Compliance Officer shall have a working knowledge of the ADA and its
implementing regulations.  VCS shall appoint the ADA Compliance Officer within
thirty (30) school days from the Effective Date of this Agreement.

3.     VCS shall vest the ADA Compliance Officer with adequate authority to coordinate
VCS' compliance with the ADA and to ensure that VCS complies with the terms set
forth in this Agreement.

4.     VCS shall publish the ADA Compliance Officer's name, title, office address, email
address and telephone number on its website, in its Student Code of Conduct, and in all
relevant notices to parents/guardians.

5.     VCS, in collaboration with its ADA Compliance Officer, shall develop a written
reporting procedure for complaints of discrimination and/or retaliation that relate to a
student with a disability, which shall include an online complaint form and submission
method, a point of contact for receipt of hard copy complaints, and a system for
reporting to the ADA Compliance Officer any complaint referenced in this Section that
is received by a school.  The ADA Compliance Officer shall maintain a centralized,
electronic, searchable database or log that tracks the complaints referenced in this
Section.  Within one hundred twenty (120) calendar days from the Effective Date of
this Agreement, VCS shall submit the written reporting procedure to the United States
for review and approval, not to be unreasonably withheld.  The written reporting
procedure shall be implemented within thirty (30) calendar days from receipt of
approval from the United States.  If the approval of the United States is provided at a
time when VCS is not in session, then the 30-day period shall begin on the next school
day that VCS is in session.

6.     By December 1, 2021, and by the same dates annually thereafter during the 2022-23
and 2023-24 school years, VCS shall provide the United States with a copy of all
complaints that VCS has received as of the implementation date of the written reporting
procedure of disability discrimination concerning the discipline of a student with a
disability and/or the exclusion of a student with a disability from VCS programs,
services or activities, as well as a copy of VCS' findings and resolution of each such
complaint.  VCS is not required to duplicate information it previously provided to the
United States in a subsequent reporting period.

R.     Initial Notice to Parents/Guardians

Within fourteen (14) calendar days from the Effective Date of this Agreement, the VCS Superintendent shall publish a copy of this Agreement on VCS' public website and send written notice of VCS' entry into this Agreement with the United States to the parents/guardians of all VCS students. The notice shall inform the parents/guardians of the web address where they can access a copy of this Agreement.

S.  Reporting

  1.  Initial Report:  Two hundred forty (240) calendar days following the Effective Date of this Agreement, VCS shall submit a report to the United States confirming its implementation of the policies referenced in Sections O of this Agreement, if the policies have been approved by the United States and its fulfillment to that date of the training requirements set forth in Section P of this Agreement. VCS shall also provide the United States with the following:

      a.  attendance logs maintained pursuant to the training sessions that it will have conducted pursuant to Section P of this Agreement, if any, by the time of the Initial Report;

      b.  complaints, including resolutions, as described under Section Q of this Agreement if any complaints have been received under that procedure; and

      c.  the findings of the ESE Director as a result of evaluations, if any, of VCS' involvement of law enforcement and any remedial actions taken, as required under Section O of this Agreement.

  2.  Subsequent Reports:  For the Term of this Agreement, every one hundred-eighty (180) calendar days from the anniversary of the due date of the Initial Report, VCS shall submit a Subsequent Report to the United States regarding its compliance with this Agreement and shall provide the information set forth and required in and with the Initial Report, above. VCS is not required to duplicate information it previously provided to the United States in a subsequent reporting period.

T.  Annual Certifications

For the Term of this Agreement, every year on the anniversary of the due date of the Initial Report, VCS shall submit to the United States certifications signed by the Superintendent, ESE Director, and the ADA Compliance Officer, attesting to their compliance with the terms of this Agreement.

## OTHER PROVISIONS

U.  Effective Date - The effective date of this Agreement is the date of the last signature below.

Case 6:21-cv-01791-JSS-RMN Document 1-1 Filed 10/27/21 Page 16 of 27 PageID 37

V.    <u>Term</u> - The duration of this Agreement will be three years from the Effective Date.

W.    <u>Consideration</u> - In consideration for entering this Agreement, the United States will refrain from undertaking further enforcement action relating to this investigation or from filing a civil action alleging discrimination based on the allegations set forth in Section J above and the findings of the United States' investigation, except as provided in Paragraph X.

X.    <u>Compliance</u> – The United States may review compliance with this Agreement at any time. VCS will cooperate fully with the United States' efforts to monitor compliance with this Agreement, including but not limited to, providing the United States with reasonably requested information.  If the United States believes that VCS has failed to comply adequately or in a timely manner with any requirement of this Agreement or that any requirement has been violated, the United States will notify VCS in writing.  If VCS anticipates a breach of this Agreement due to another legal obligation it has, VCS will notify the United States in writing.   In either case, the Parties will negotiate in good faith to resolve the breach for thirty (30) calendar days, or until an impasse is reached, whichever is longer. If the Parties are unable to reach a satisfactory conclusion, the United States may file a civil action in federal district court to enforce the terms of this Agreement, or take any other action to enforce Title II of the ADA.   If any part of this Agreement is for any reason held to be invalid, unlawful, or otherwise unenforceable by a court of competent jurisdiction, such decision will not affect the validity of any other part of the Agreement. VCS and the United States will meet within fifteen (15) calendar days after a court's decision to determine whether the Agreement should be revised or supplemented in response to the court's decision.

Y.    <u>Continuing Responsibility</u> - This Agreement is not intended to remedy any other potential violations of the ADA or any other law that is not specifically addressed in this Agreement. Nothing in this Agreement relieves VCS of its obligation to otherwise comply with the requirements of the ADA or other laws.

Z.    <u>Communications with the United States</u> - All documents and communications required to be sent to the United States under the terms of this Agreement shall be sent to the following individuals, or other persons as may be designated by the United States Attorney's Office for the Middle District of Florida or the Department, by overnight courier, or where practicable, by e-mail:

Tiffany Cummins Nick
Assistant U.S. Attorney
Civil Division, Civil Rights Unit
United States Attorney's Office
400 W. Washington Street, Suite 3100
Orlando, Florida  32801
Tiffany.Nick@usdoj.gov

Clarette Yen (e-mail only)
Attorney Advisor
Disability Rights Section, Civil Rights Division
U.S. Department of Justice
Clarette.Yen@usdoj.gov

AA.    <u>Communications with VCS</u> - All documents and communications required to be sent to VCS under the terms of this Agreement shall be sent to the following individuals, or other persons as may be designated by VCS, by overnight courier, or where practicable, by e-mail:

Sacha Dyson
GrayRobinson, P.A.
401 East Jackson Street, Suite 2700
Tampa, Florida  33602
sacha.dyson@gray-robinson.com

Kevin W. Pendley
General Counsel
Volusia County Schools
P.O. Box 2118
DeLand, FL  32721
kwpendle@volusia.k12.fl.us

AB.    <u>Non-Waiver</u> - Failure by the United States to enforce any provision in this Agreement is not a waiver of its right to enforce any provision of this Agreement.

AC.    <u>Severability</u> - If any term of this Agreement is determined by any court to be unenforceable, the other terms of this Agreement shall nonetheless remain in full force and effect, provided, however, that if the severance of any such provision materially alters the rights or obligations of the parties, the United States and VCS shall engage in good faith negotiations in order to adopt mutually agreeable amendments to this Agreement as may be necessary to restore the parties as closely as possible to the initially agreed upon relative rights and obligations.

AD.    <u>Binding Nature of the Agreement</u> - This Agreement is applicable to and binding on VCS, including its officers, agents, employees, and assigns.

AE.    <u>Authority</u> - The signatories for VCS represent that they are authorized to bind VCS to this Agreement.

AF.    <u>Entire Agreement</u> - This Agreement is the entire agreement between the United States and VCS on the matters raised herein and no other statement, promise or agreement, either written

or oral, made by any party or agents of any party, is enforceable.  This Agreement can only be modified by mutual written agreement of the parties.

---

1 The United States recognizes that VCS provides special education and related services to students with disabilities under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").  The Department of Education administers the IDEA, 20 U.S.C. § § 1400, *et seq*., and Section 504 as to recipients of federal financial assistance from the Department of Education and promulgates and enforces the regulations implementing these statutes. 34 C.F.R. Part 300.  The United States Attorney's Office and the Department make no findings or inferences in this Agreement regarding VCS' compliance with its IDEA or Section 504 obligations.  Nor, does this Agreement affect VCS' obligations under the IDEA, Section 504, or federal regulations thereunder.  This Agreement only addresses VCS' obligations under Title II of the ADA.

A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  28 C.F.R. § 35.104.  For purposes of this Agreement, a "qualified individual with a disability" or "student with a disability" includes any student with a disability, regardless of whether the student receives services or accommodations under an Individual Education Program (IEP) or Section 504 plan.

3 For the purposes of this Agreement, knowledge of a behavioral issue that may be the result or manifestation of the student's disability is presumed where VCS has received formal or informal notice from a student, parent, or guardian of a student's disability as defined by the ADA, or where the student has been identified or should be identified as a child with a disability pursuant to 34 C.F.R. § § 104.35 or 300.301, *et seq*.

4 Removal from the classroom for any period of time during the day shall count as one (1) day for the purpose of the five- (5-) day threshold.  However, multiple incidents occurring over the course of one school day shall only be counted as one day for the purpose of the five- (5-) day threshold.  Further, any removal of a student with a disability from classroom instruction for a behavioral incident that may be a result or a manifestation of a student's disability, except those removals set forth in paragraph (O) (2)(a)(i)(2) of this Agreement, shall be counted towards the five- (5-) day threshold. Nothing in this Agreement shall affect how VCS accounts for a removal of a student with a disability for purposes of 20 U.S.C. § 1415(k)(1).

5 "Exclusionary Discipline" refers to disciplinary consequences that remove students from learning in their regular classroom, including referrals to law enforcement, expulsion, involuntary discipline transfers, out-of-school suspension, in-school suspension, class suspension, and other informal short-term removals. The term "exclusionary" does not refer to short-term consequences or interventions that are part of IEP, BIP, or Section 504 plan as defined in paragraph O(2)(a)(i)(2) as exempt from the term "informal removal." This term also does not refer to interventions used by teachers to address misconduct, including through brief time-outs or other interventions, while generally keeping the student in the classroom environment. Such "exclusionary" consequences also do not include other consequences or interventions that do not remove students from learning in their regular classroom, such as contacting parents/guardians, lunch or after-school detention, Saturday school, or counseling.

6 For purposes of this agreement, "Behavior Support Plan" refers to any plan for an individual student that contains positive behavioral interventions, strategies, and/or supports, and which may include modifications to the nature of instruction, curriculum, or school routine. While Behavior Support Plans are often prepared for students with a documented disability who have an IEP and are identified as a Behavior Intervention Plan or BIP, the student need not have an IEP to have a Behavior Support Plan.

---

AGREED AND CONSENTED TO:

FOR THE UNITED STATES DEPARTMENT OF JUSTICE:

| | |
|---|---|
| KARIN HOPPMAN | KRISTEN CLARK |
| Acting United States Attorney | Assistant Attorney General |
| Middle District of Florida | Civil Rights Division |
| | |
| RANDY HARWELL | REBECCA B. BOND |
| Chief | Chief |
| Civil Division | ANNE S. RAISH |
| YOHANCE PETTIS | Principal Deputy Chief |
| Deputy Chief | KATHLEEN P. WOLFE |
| Civil Division | Special Litigation Counsel |
| | ROBERTA KIRKENDALL |
| /s/ | Special Litigation Counsel |
| TIFFANY CUMMINS NICK | Disability Rights Section |
| Assistant United States Attorney | Civil Rights Division |
| U.S. Attorney's Office | |
| Civil Division, Civil Rights Unit | |

400 W. Washington Avenue, Suite 3100

Orlando, Florida 32801

(407) 648-7500

tiffany.nick@usdoj.gov

JOSEPH M. TOMPKINS

Assistant United States Attorney

U.S. Attorney's Office

Civil Division

400 N. Tampa Street, Suite 3200

Tampa, Florida 33602

(813) 274-6000

joseph.tompkins@usdoj.gov

Dated: 7/13/21

/s/

CLARETTE YEN

Attorney Advisor

Disability Rights Section

U.S. Department of Justice

950 Pennsylvania Ave., N.W.

Washington, D.C. 20530

(202) 514-0555

Clarette.Yen@usdoj.gov

Dated: 7/13/21

FOR THE VOLUSIA COUNTY SCHOOL BOARD ON BEHALF OF THE VOLUSIA COUNTY SCHOOL DISTRICT SYSTEM ("VCS"):

/s/

LINDA CUTHBERT

Chairwoman

Volusia County School Board

Dated: 8/2/21

/s/

DR. RONALD "SCOTT" FRITZ

Superintendent of Schools

Volusia County School District

Dated: 7/28/21

# APPENDIX A: GUIDELINES BETWEEN THE SCHOOL DISTRICT AND LOCAL POLICE DEPARTMENTS OR SRD/SRO

## Purpose

The purpose of this document is to set forth guidelines ensuring the local police department, the SRD/SRO and school district have a shared understanding of roles and responsibilities to maintain safe schools, improve school climate, and support educational opportunities for all students.

The intent of this document is to express an understanding between both parties that schools are meant to be places where students can learn from their mistakes in order to grow into healthy, productive adults. Teachers and administrators, within the school district, have an obligation to respond to inappropriate behavior of students in a way that supports personal growth and learning opportunities for all students.

The school district's goal is to administer discipline in such a way that keeps students within the classroom setting as much as possible. When feasible school-based infractions shall be addressed using non-punitive interventions, which improve school safety, security and academic performance (e.g. classroom interventions, counseling services, restorative justice, peer mediation, etc.). Infractions shall not be through harsh, exclusionary measures or arrests.

When possible, the school district and local police department and/or SRD/SRO will limit the use of out-of-school suspensions, expulsions and arrests for incidents involving conduct, that do not pose serious and credible threats to the safety of pupils and staff. The school district and local police department or SRD/SRO share the goal to reduce justice-system involvement of all students.

## Involvement of Local Police Department or the SRD/SRO In a School-Based Infraction

1. The local police department's role within the school district is a limited one. It is not the local police department's or SRD/SRO role to enforce school disciplinary rules or punish students for misbehavior. The purpose of the local police department's or SRD/SRO involvement, in school-based incidents, is to assist the school district in maintaining safe and secure schools with positive learning environments providing a law enforcement resource should serious incidents take place within the school. Police involvement is only necessary when a situation cannot be handled safely and appropriately by the school district's internal disciplinary procedures.

2. Prior to involving the local police department or the SRD/SRO, the school Principal or designee should attempt to de-escalate school-based incidents involving students.

3. The Principal or designee must make the decision to involve the local police department or the SRD/SRO in any school-based incident.

4. Police involvement in school-based incidents should be limited to situations when it is:

   a. Necessary to protect the physical safety of students and staff from imminent harm; or

   b. Appropriate to address criminal behavior of persons other than students

5. DJJ Civil Citations and/or arrests should only be used for the following incidents:

   a. Fights involving serious bodily harm, or any fights which necessitated medical treatment for any of the participants;

   b. Other serious violent offenses, such as robbery, arson, or sexual assault;

   c. Use or possession of dangerous weapons, such as knives, guns, or brass knuckles. Other items, which could be used as weapons, shall only result in police intervention if

it is clear the intention to use the item as a weapon can be established.

    d.    The sale of illegal drugs or alcohol.

    e.    Offenses designated as requiring a referral to law enforcement per school board policy.

6.    The school Principal or designee when practical shall be consulted prior to the arrest of a student.

7.    A student's parent or guardian shall be notified as soon as practical when they are issued a DJJ Civil Citation, Citation or are arrested.

## Procedures Concerning Other Police Conduct in Schools

8.    When permitted by state or case law, and agency policies, the police may conduct a search of a student's person, possessions, or locker.

9.    The police will consult with the Principal or designee when practical before conducting a search on a students' person, possessions, or locker.

10.    The police shall not request school officials to conduct a search of a students' person, possessions, or locker in order to avoid the requirements articulated above.

11.    Physical restraints (handcuffs, Tasers, Mace, pepper spray, or other physical and chemical restraints) shall be used in accordance to the responding law enforcement agency's policy procedures. These items should only be used within the school community and where less intrusive measures have failed.

12.    Strip searches of students by police or school officials are prohibited.

13.    The Principal or designee shall notify police officers responding to a school-based infraction, of any students involved who may have disabilities and/or an Individualized Education Plan ("IEP") and may require special treatment or accommodations. Police involvement with students with  disabilities when practical shall be in accordance with the student's Individualized Education Plan (IEP), any Behavior Intervention Plan, 504 Plan, and School Board policies.

14.    Immigration officials are not permitted on school campus at any time. Student information shall not be shared with immigration officials.

## Transparency Accountability, and Training

15.    Any school employee, who fails to follow the protocol established above in paragraphs 1 through 15, resulting in the unnecessary involvement of the police, may be subject to

corrective action.

16.    The school district and SRD/SRO shall maintain records of every school-based incident resulting in police involvement. The records will be disaggregated by:

    a.    Description of the incident

    b.    Names of school officials involved

    c.    Manner in which the police were notified

    d.    Searches/questioning of students

    e.    Tickets/citations, or summonses issued

    f.    Arrests

    g.    Filing of delinquency petitions

    h.    Referrals to a probation officer, and other referrals to the juvenile justice system

    i.    Data shall also be disaggregated by race, ethnicity, age, school, grade, gender and disability status of the student(s) involved if possible.

17.    Each record described above shall also include information on any suspension, expulsion, disciplinary transfer, or other disciplinary consequence imposed on the student.

18.    The SRD/SRO shall be trained on their role within schools and on the rights afforded to students prior to being assigned to any school-based incidents. Suggested training:

    a.    Child and adolescent development and psychology

    b.    Age-appropriate responses.

    c.    Cultural competence.

    d.    Restorative justice techniques.

    e.    Special accommodations for students with disabilities.

    f.    Practices proven to improve school climate.

    g.    Creation of safe spaces for lesbian, gay, bisexual, transgender, and questioning students.

    h.    Autism Awareness training.

19. The above trainings shall be conducted on an annual basis.

20. The SRD/SRO shall create a user-friendly system for students, parents, or other individuals to lodge complaints against police officers (SRD/SRO). Such grievances can be oral or written.

21. The complaint system must provide for independent investigation of any and/or all allegations as well as swift and comprehensive redress.

22. Complainants shall receive written, notification of the resolution within 45 days or else written notification of the need for additional time to resolve the issue (including concrete and specific actions taken to work toward resolution of the complaint).

23. If allegations of serious abuse are pending against a police officer (SRD/SRO), he/she may not be further deployed or assign d to respond to any school-based infraction upon notification by the school district.

24. If allegations of serious abuse against a police officer (SRD/SRO) are substantiated, he/she must be permanently suspended from any assignment relating to a school-based infraction.

25. Appropriate monitoring of the contractual services provided by law enforcement (SRD/SRO) could include a sign in and sign out sheet or other forms of verification approved by the School District's Representative and the agency.

26. The term of these guidelines shall be for the 2017-2018 school year.

Revised: 8/14/2017

## APPENDIX B: TRAINING TOPICS AND SUMMARY OF CONTENT

| Topic | Content |
|---|---|
| Settlement Agreement between VCS and the United States | What the Settlement Agreement requires of VCS administrators, faculty, and staff with respect to new policies, procedures, and training. |
| Legal requirements of the Americans with Disabilities Act (ADA) | • Explanation of the non-discrimination and non-retaliation provisions of the ADA |

|  | with examples of conduct that violates those laws. |
|  | • Obligations of administrators, teachers, and VCS staff (including contracted staff) under the ADA. |
|  | • Explanation of the complaint reporting and review structure for alleged violations of the ADA. |
| **The characteristics of students with autism spectrum disorders (ASD) and their academic and behavioral programming** | • Characteristics of the entire range of students with ASD.<br><br>• Evidence-based procedures in academic and behavioral programming for students with ASD. |
| **Evidence-based behavior management strategies and procedures** | • Positive Behavior Interventions and Supports (PBIS).<br><br>• Applied behavior analysis, functional behavioral assessments, and data collection and analysis.<br><br>• Strategies for deescalating students engaged in serious problem behavior, including participant engagement in roleplaying/modeling of such strategies.<br><br>• Strategies and procedures for developing and implementing IEPs and Behavior Support Plans for addressing problem behavior. |
| **Data collection and use for programming with students with ASD** | Ecologically valid (i.e., valid for classroom use) methods of data collection, how to analyze this |

| | |
|---|---|
| | data, and how the data can be used to inform academic and behavior programming. |
| **PST process** | • Overview of VCS' PST process with a focus on students with disabilities.<br><br>• Interventions, data collection, and timing requirements for the PST process, and resources available for administering the process. |
| **Accountability mechanisms and service/support plan implementation fidelity** | • The applicable procedures and timeframes for implementing student IEPs and Behavior Support Plans and the consequences of non-compliance.<br><br>• The method(s) that VCS officials will use to ensure accountability in implementing IEPs, Behavior Support Plans, and 504 plans. |
| **Attendance** | • Policy prohibiting informal removals.<br><br>• Process and system for tracking removals of students with disabilities.<br><br>• Student Removal Forms.<br><br>• Requirements and procedures triggered by classroom removals involving students with disabilities. |
| **Disciplining students with disabilities** | • Legal obligations, procedures, timelines, and accountability mechanisms in using disciplinary procedures with |

| | students with IEPs and Behavior Support Plans. |
| | •    Student Code of Conduct and other applicable policy revisions resulting from the Settlement Agreement. |
| **Law enforcement** | •    VCS Law Enforcement Guidelines. |
| | •    Reporting requirements relating to law enforcement involvement with students with disabilities and procedures for providing remedial measures and additional supports. |
| | •    Proactive measures to mitigate law enforcement involvement with students with disabilities. |

**[ADA Enforcement Page](#)** | **[ADA Home Page](#)**