UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KIMBERLY POWELL, as next
of kin and on behalf of J.T.A.,
a minor, et al.,

      Plaintiffs,

v.                        Case No. 6:21-cv-1791-JSS-NWH

THE SCHOOL BOARD OF VOLUSIA
COUNTY, FLORIDA,

      Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court on the Motion to Dismiss filed by Defendant and Plaintiffs' Response thereto. (Docs. 93, 97, 99). For the reasons stated below, the undersigned will respectfully recommend that the Court dismiss the Second Amended Complaint without prejudice and grant Plaintiffs leave to amend.

## BACKGROUND

Plaintiffs initiated this putative class action on October 27, 2021, alleging systemic violations of the Americans with Disabilities Act of 1990 (the "ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). (*See* Doc. 1). Specifically, Plaintiffs allege that Defendant failed to accommodate their minor children's disabilities and engaged in a pattern of discrimination and deliberate indifference on account of those disabilities. (*See id.*).

Plaintiffs amended their Complaint shortly after filing this action. (*See* Doc. 4). This Court dismissed the Amended Complaint on November 9, 2022, because Plaintiffs failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act (the "IDEA"). (*See* Doc. 30). Due to intervening precedent from the Supreme Court of the United States in *Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023), Plaintiffs appealed, and the Eleventh Circuit reversed the dismissal pursuant to *Perez* and remanded to this Court. (*See* Docs. 31, 35, 37). Defendants again sought dismissal, (*see* Doc. 40), and the Court dismissed the Amended Complaint without prejudice for failing to allege sufficient facts to support Plaintiffs' claims under the ADA and Section 504, (*see* Doc. 57). Plaintiffs thereafter filed the Second Amended Complaint, (*see* Doc. 59), which was also dismissed as untimely, (*see* Doc. 83).

The Court reopened the case on April 24, 2025, and Plaintiffs refiled the operative Second Amended Complaint (the "SAC") on the same day. (*See* Doc. 89). Defendant filed the instant Motion to Dismiss on May 23, 2025, arguing that the SAC (1) is an impermissible shotgun pleading and (2) fails to state a claim under the ADA and Section 504. (*See* Doc. 93). Plaintiffs responded on June 10, 2025. (Doc. 97).[1]

## STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed.

---

[1] The Court referred this matter to the undersigned pursuant to 28 U.S.C. § 636 on August 15, 2025. (*See* Doc. 99).

R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).

Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). As the *Weiland* court explains:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings. [1] The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. [2] The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. [3] The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.

[4] Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1321–23 (footnotes omitted).

## DISCUSSION

### I.    Shotgun Pleading

Defendant asserts that the SAC constitutes a shotgun pleading with "conflicting and disconnected factual and legal allegations." (Doc. 93 at 2). This argument is based largely on the SAC's allegations regarding the federal government's 2018 investigation into Volusia County schools. (*Id.* at 8–10); (*see* Doc. 89, ¶¶ 94–115). Although Defendant does not specify *which* type of shotgun pleading the SAC constitutes, the second type—a pleading that "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," *Weiland*, 792 F.3d at 1320—is the only category that might conceivably apply to the SAC.

The SAC is not a model of clarity. Its two primary sins are (1) omitting specific details and timeframes for most of the alleged misconduct and (2) containing a substantial amount of largely irrelevant allegations regarding a federal investigation and subsequent settlement between the United States and the Defendant. But despite the SAC's flaws, it is not so "replete" with conclusory, vague, and immaterial allegations that it qualifies as a shotgun pleading. The real mark of a "shotgun pleading" is that "a defendant who reads the complaint would be hard-pressed to

- 4 -

understand 'the grounds upon which each claim [against him] rests.' " *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1322–23).

The SAC is not so scattershot that Defendant cannot understand the basis of the claims asserted. It is apparent from the SAC that Plaintiffs allege discrimination by employees of Defendant against students with disabilities during their time in Volusia County schools. The SAC describes many of these instances with significant detail and attempts to track the elements of its statutory claims. This does not mean that the SAC survives dismissal on other grounds, but the pejorative label of "shotgun pleading" is a step too far.

## II.    Failure to State a Claim

This action sits at the busy intersection of three federal statutes: Title II of the Americans with Disabilities Act (the "ADA"); Section 504 of the Rehabilitation Act ("Section 504"); and the Individuals with Disabilities Education Act (the "IDEA"). Although all three statutes relate to the education of students with disabilities, each statute provides for different remedies for wrongdoing and imposes different requirements for obtaining relief. All three statutes provide relief, albeit in different forms, when a student is unlawfully denied a "free appropriate public education" ("FAPE") as guaranteed by the IDEA. 20 U.S.C. § 1400(d)(1)(A).

One distinction critical to this case is that the IDEA, unlike the ADA or Section 504, requires a claimant to exhaust their administrative remedies before filing suit and expands that requirement to any civil action "seeking relief that is also available under" the IDEA. 20 U.S.C.A. § 1415(l). In *Perez*—the intervening precedent that

guided the Eleventh Circuit's prior decision in this case, (*see* Doc. 35)—the Supreme Court explained that the IDEA's administrative exhaustion requirement could apply to a claim for the denial of a FAPE grounded in the ADA or Section 504, if the claimant seeks a remedy the IDEA *could* provide. 598 U.S. at 150 ("Under our view, for example, a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g)."). This matters here because Plaintiffs do not allege that they sought, let alone exhausted, administrative remedies before filing this lawsuit.[2]

Between the IDEA, the ADA, Section 504, the *Perez* decision, and its emerging progeny, Plaintiffs must navigate an increasingly complex—and evolving—legal patchwork in order to state a claim here. The Court must now address three issues in particular: (1) whether Plaintiffs seek an available form of relief; (2) whether Plaintiffs' claims are time-barred; and (3) if there is relief potentially available to Plaintiffs *and* their claims are not time-barred, whether the SAC contains sufficient allegations to state a plausible claim for relief.

### A.    Available Relief

Plaintiffs' claims are not barred by the IDEA's exhaustion requirements to the extent that Plaintiffs seek relief unavailable under the IDEA. (Doc. 35 at 9). The IDEA

---

[2] Although Plaintiffs have not explicitly stated as much, Plaintiffs have also never contended that they *did* attempt to exhaust their administrative remedies. (*See* Docs. 17, 48, 66, 97). And the Eleventh Circuit's opinion in this case, (Doc. 35), relies on the assumption that Plaintiffs did not seek administrative relief.

does not provide for *compensatory* or *punitive* damages, both forms of relief that Plaintiffs seek in this action. (*Id.*); (SAC, ¶¶ 1, 132-2, 132-3, 138-2, 138-3).[3] Defendant asserts that Plaintiffs cannot recover damages for *compensatory education*, an equitable form of relief that the IDEA provides, by which a court "orders extra educational services designed to compensate for a past deficient program." *R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1178 (11th Cir. 2014); (Doc. 93 at 16, 17). The SAC does not, however, mention "compensatory education" and does not specifically request relief that could be characterized as such. From the face of the SAC, Plaintiffs seek money damages of $50,000,000.00, plus attorney's fees and costs, not any extra educational services. (*Id.*, ¶ 1). The Eleventh Circuit disposed of this exact argument, for the same reasons, over two years ago. (Doc. 35 at 9).

The unanimous *Perez* court made it clear that it was not deciding whether compensatory damages are "in fact available" under the ADA or Section 504—only whether the IDEA requires administrative exhaustion when a plaintiff seeks compensatory relief. 598 U.S. at 151. Decisions after *Perez* have narrowed the field even further. The Eleventh Circuit held last year in *A.W. by & Through J.W. v. Coweta County School District* that compensatory damages for emotional distress are not available under the ADA. 110 F.4th 1309, 1314 (2024). And before that, the Supreme

---

[3] The SAC also alleges that Defendant's actions "establish a claim for declaratory and injunctive relief and compensatory damages . . . ." (SAC, ¶ 138). But the IDEA provides for injunctive relief, so administrative exhaustion would be needed to obtain such relief. *See Lartigue v. Northside Indep. Sch. Dist.*, 100 F.4th 510, 515 (5th Cir. 2024). Nor do Plaintiffs allege any ongoing or "live" controversy such that declaratory relief would be available. *See Roe v. Healey*, 78 F.4th 11, 23 (1st Cir. 2023) (declaratory relief not available for school defendants' past conduct as to disabled student plaintiffs).

Court held in *Cummings v. Premier Rehab Keller, P.L.L.C.* that Section 504 did not allow recovery of such damages. 596 U.S. 212, 222–30 (2022) (discussing recovery of damages under Spending Clause antidiscrimination statutes, including Section 504). Amid the rapid development of this area of law, the question is: what *can* plaintiffs recover in private actions under the ADA or Section 504 for the denial of a FAPE *without* implicating the IDEA and its administrative exhaustion requirement?

The Court does not need to conclusively answer this question at this stage. As the Eleventh Circuit stated in *A.W. by & Through J.W.*, "[t]hat a plaintiff might misconceive his remedy does not warrant dismissal of the complaint unless he is entitled to 'no relief under any state of facts.'" 110 F.4th at 1315 (quotations reduced). So the Court need only determine whether Plaintiff might be entitled to *any* relief if liability is proven. The *Cummings* court pointed out that many statutes rooted in the Spending Clause of the Constitution, such as the IDEA, "may be enforced through implied rights of action, and that private plaintiffs may secure injunctive or monetary relief in such suits."[4] 596 U.S. at 216. The *A.W. by & Through J.W.* court permitted the plaintiff to proceed on claims of "physical harm, compensation for lost educational benefits, remediation, and nominal damages." 110 F.4th at 1314–15. Such economic

---

[4] The Supreme Court has likened Spending Clause statutes, where Congress appropriates funds to the States with certain conditions attached, to contracts between the federal government and the States receiving funds. *See Barnes v. Gorman*, 536 U.S. 181, 187 (2002). Under this analogy, a State "may be held liable to third-party beneficiaries"—*i.e.*, the individuals whom the Spending Clause statute serves to protect—"for intentional conduct that violates the clear terms of the relevant statute." *Id.* Relatedly, this was why *Cummings* found that a plaintiff cannot recover emotional damages under the IDEA: a violation of the IDEA is essentially a breach of contract by the State, and emotional damages are typically not available for a breach of contract. *Cummings*, 596 U.S. at 219–20.

damages are clearly different from the equitable remedies provided by the IDEA, like injunctive relief and compensatory education. *See Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) (federal funding recipients have sufficient notice that they may be liable for actual compensatory damages due to their own acts or due to their deliberate indifference to wrongdoing).

Because the ADA and Section 504 allow claims for compensatory and punitive damages, remedies that the IDEA does not provide, and because the SAC seeks compensatory and punitive damages without couching those damages in terms of emotional distress or another remedy forbidden by caselaw, the SAC sufficiently pleads damages without violating the ADA or Section 504's limits and without triggering the IDEA.[5]

## B.    Timeliness

Next, Defendant asserts that Plaintiff's claims are time-barred because the SAC fails to state any dates or timeframes for any of the alleged misconduct. Defendant is correct that courts generally apply the analogous state statute of limitations to ADA and Section 504 discrimination claims. *Horsley v. Univ. of Alabama*, 564 F. App'x 1006, 1008 (11th Cir. 2014) (noting that "for discrimination claims under Title II of the ADA and the Rehabilitation Act, which were both enacted prior to 1990, the applicable limitations period is governed by the most analogous state statute of limitations."); *see Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004) (holding that the 4-year federal

---

[5] This finding is without prejudice to arguments regarding the availability of damages at a future stage of this action.

statute of limitations provided by 28 U.S.C. § 1658 only applies "if the plaintiff's claim against the defendant was made possible by a post–1990 enactment").

The Eleventh Circuit has applied Florida's statute of limitations for personal injury tort claims (which was then 4 years) where the thrust of the discrimination claim was the plaintiff's personal injuries. *Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1320 (11th Cir. 2021) ("[T]his Court generally applies the state statute of limitations for personal injury actions in cases involving claims arising under the ADA and the Rehabilitation Act."). Florida enacted a 2-year statute of limitations for personal injury claims on March 24, 2023—but for actions filed before that date, the statute of limitations at that time would apply, *i.e.* 4 years. *See id.*; *Cuff v. Fla. A&M Univ. & Bd. of Trs.*, No. 23-12474, 2024 WL 4558807, at *3 (11th Cir. Oct. 23, 2024) (discussing application of 4-year statute of limitations to ADA and Section 504 claims, which were initially filed in late 2022); Fla. Laws Ch. 2023-15 §§ 3, 30, 31.

Whether this action fits the mold of a personal injury case, as opposed to another type of tort action, is not entirely clear from the record before the Court. But even assuming a 4-year statute of limitations applies, the SAC does not allow the Court to determine whether the complained-of conduct occurred within 4 years of October 27, 2021, the date Plaintiffs filed this action. (Doc. 1). Because dismissal under a statute of limitations is appropriate only when "it is apparent from the face of the complaint that the claim is time-barred," *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018) (quotation omitted), *aff'd,* 587 U.S. 262

(2019), the SAC's vagueness as to the timeframe of the alleged misconduct prevents
dismissal on this basis.

That said, this does not mean that Plaintiff can skirt the statute of limitations
simply by refusing to allege specific dates. In fact, the SAC generally omits even the
*year* of the alleged misconduct, which makes any determination as to timeliness
impossible. But Rule 8 requires only "a short and plain statement of the claim showing
that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although entitlement to
relief may depend on the claim's timeliness, "a motion to dismiss on statute of
limitations grounds should not be granted where resolution depends either on facts not
yet in evidence or on construing factual ambiguities in the complaint in [a]
defendant['s] favor." *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1317 (M.D.
Fla. 2013). Because Plaintiffs' claims are not time-barred on the face of the SAC, the
undersigned will recommend denying without prejudice Defendant's request to
dismiss this action as time-barred.

### C.    Liability

Finally, Defendant asserts that the SAC fails to state a claim because the alleged
facts do not establish Defendant's "deliberate indifference" to discrimination. (Doc.
93 at 21). Ordinarily, a violation of the ADA or Section 504 "entitles a plaintiff only
to injunctive relief." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir.
2019). "To get damages . . . a plaintiff must clear an additional hurdle: he must prove
that the entity that he has sued engaged in intentional discrimination, which requires
a showing of 'deliberate indifference.' " *Id.* Deliberate indifference is an "exacting

standard" and requires proof that the defendant "knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Id.* (quotations omitted). Moreover, to hold a governmental entity liable, the plaintiff must show that an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* (citation omitted).

In essence, to succeed on their claims here, Plaintiffs must prove that Defendant made an official decision *not* to remedy the misconduct at issue through an official with the power to do so. Otherwise, only injunctive relief is available—and injunctive relief to remedy the denial of a FAPE falls within the sweep of the IDEA, which requires exhaustion of administrative remedies. *See supra*, § II(B). The question at this stage is not whether Plaintiffs have proven by a preponderance of the evidence that Defendant made such a decision; the question is whether Plaintiffs have stated "sufficient factual matter" that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The majority of the SAC's allegations of misconduct attribute Defendant's actions to unnamed "employees," without specifying those employees' position with Defendant or their degree of authority. (SAC, ¶¶ 17, 21, 22, 26, 30, 35, 39, 43, 47, 51, 55, 63, 67, 71, 75, 79, 83). The actions allegedly taken by these employees include physical harms, such as choking or restraining Plaintiffs; verbal attacks, such as

shouting and insulting Plaintiffs; exclusion from classrooms, field trips, and school lunches, as well as unjustified suspensions; and unnecessary escalations, such as involving the police, inducing students to admit to self-harm in order to justify their involuntary commitment under the Baker Act, and more. (*See id.*).

The SAC also discusses at length a 2018 investigation by the United States into alleged discrimination by Defendant against disabled students. (*Id.*, ¶¶ 94–115). The resulting settlement agreement between Defendant and the United States, (Doc. 4-1), dated August 2, 2021, outlined similar allegations against Defendant, although Defendant did not admit liability in that agreement. Both the SAC and the settlement agreement reference allegations of "systematic" discrimination against disabled students, particularly through the excessive usage of law enforcement officers and involuntary commitment and the routine exclusion of disabled students from school programs. (*See* SAC; Doc. 4-1).

Although the SAC fails to specifically identify any school official with the "authority to address the alleged discrimination and to institute corrective measures," *Silberman*, 927 F.3d at 1134, and fails to allege that any such official knew about misconduct and chose not to act, this does not *per se* justify dismissal here. While the deliberate indifference standard is an "exacting" standard, a pleading can cross "the line from conceivable to plausible" if it creates a "reasonable expectation that discovery will reveal evidence" to fill the gaps. *Id.* at 1136 (quoting *Bell Atl. Corp.*, 550 U.S. at 556). By alleging systematic acts of discrimination by a variety of employees without naming any particular official with decision-making authority, the SAC

teeters on that line. Some of the SAC's allegations, viewed in isolation, do not create a reasonable inference that Defendant was deliberately indifferent. Isolated acts of discrimination within the classroom do not, for example, suggest that any official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures" knew of the discrimination and failed to act. *See id.* at 1134. But more pervasive and systematic acts of discrimination, such as those alleged in connection with the United States' investigation of Defendant, may suggest—or even require—the knowledge and indifference of higher officials. (*See* SAC, ¶¶ 94–115).[6]

But while the Court can draw "reasonable inferences" in Plaintiffs' favor when considering a motion to dismiss, *McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1145 (11th Cir. 2024), it cannot reasonably infer from the SAC *both* that (1) a qualifying official knew of the alleged conduct *and* that (2) the official chose not to attempt to remedy the alleged conduct. Such a double inference would veer into pure conjecture and verge on rewriting the pleadings, which this Court cannot do. *See Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (there is no federal rule prohibiting "inference stacking", yet all inferences, stacked or not, must be "reasonable" and not merely "a guess or a possibility").

---

[6] Relying upon the investigation to establish deliberate indifference would create additional problems. For one, the investigation's allegations are not *Plaintiffs'* allegations. Second, even if Plaintiffs adopted those allegations in full, those allegations must still relate to Plaintiffs and/or the putative class; under the ADA, Section 504, and principles of standing, prior misconduct that did not actually affect Plaintiffs or the class cannot serve as the basis for Plaintiffs' claims. In order to connect the investigation to Plaintiffs and/or the class, Plaintiffs must plead enough facts to render that connection "plausible." *See Iqbal*, 556 U.S. at 677–78.

Plaintiffs need not prove the whole case in the Complaint. Rather, Plaintiffs must only allege sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 677–78. While the SAC pleads ample facts with regard to *some* elements, it pleads virtually *no* facts with regard to deliberate indifference, an element that Plaintiffs must plausibly allege to escape the IDEA's long shadow. Although it is conceivable, according to the SAC's allegations, that a qualifying official working for Defendant was deliberately indifferent, "conceivable" falls short of "plausible." *See Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (discussing impact of *Iqbal* and *Twombly* decisions). The SAC's silence on this element, combined with the SAC's paucity of allegations as to *when* the alleged misconduct occurred, prevents the SAC from crossing the line into plausibility.

Therefore, the undersigned will recommend that the Court grant the Motion to Dismiss, dismiss the SAC without prejudice, and grant leave for Plaintiffs to file a corrected Complaint. As Plaintiffs have amended their Complaint multiple times, the undersigned cautions that Plaintiffs may not get another bite at the apple.

## RECOMMENDATION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court enter an Order (1) **GRANTING** the Motion to Dismiss, (Doc. 93), (2) **DISMISSING WITHOUT PREJUDICE** the Second Amended Complaint, (Doc.

89), and (3) **GRANTING** Plaintiffs leave to file a corrected Complaint within a time the Court deems just and proper.

<u>**NOTICE TO PARTIES**</u>

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida, on December 9, 2025.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

Presiding District Judge